IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ISA ALIJAJ, | ) | Civil No.: 3:11-cv-00691-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

        Attorney for Plaintiff


S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902


FINDINGS AND RECOMMENDATION - 1

David Burdett
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Isa Alijaj brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Disability Income Benefits (DIB) under the Social Security Act (the Act).

For the reasons set out below, the Commissioner's decision should be reversed, and this action should be remanded for an award of benefits.

## Procedural Background

Plaintiff filed an application for DIB on February 7, 2008, alleging that he had been disabled since January 16, 2008 because of mental illness, high cholesterol, high blood pressure, and diabetes.

After his claim was denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

On July 21, 2009, a video hearing was conducted by Administrative Law Judge (ALJ) Deborah Van Vleck.   Plaintiff and Cornelius Ford, a Vocational Expert (VE), testified at the hearing.

In a decision filed on January 11, 2010, ALJ Van Vleck found that Plaintiff was not disabled within the meaning of the Act.

FINDINGS AND RECOMMENDATION - 2

On April 8, 2011, the Appeals Council denied Plaintiff's request for review, and the

ALJ's decision became the final decision of the Commissioner.  In the present action, Plaintiff

challenges that decision.

## Background

Plaintiff was born in Yugoslavia on March 10, 1961, and was 48 years old at the time of

the ALJ's decision.  He has at least a high school education and served for many years in the

Yugoslavia army.  Plaintiff  has past relevant work experience as a machine operator and a

security guard.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary

of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step

Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

FINDINGS AND RECOMMENDATION - 3

presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

FINDINGS AND RECOMMENDATION - 4

## **Medical Record**

Plaintiff was treated at an emergency room in September, 2000, for symptoms of agitation and insomnia.  In his notes of an examination at the Oregon Health and Science University (OHSU) on September 26, 2000, Dr. Landy Sparr noted that Plaintiff had been serving as an officer in the Yugoslavian army when war broke out in 1992, and that he had left the army, escaped to Macedonia, and eventually fled to Germany where he was reunited with his family.  Dr. Sparr noted that Plaintiff had been hospitalized in Germany because of psychiatric problems, and that treatment had  included Haldol injections.  He reported that Plaintiff had moved to the United States with his family in 2000, and had been without his medications for six months during his relocation.  Dr. Sparr opined that the stress of the move probably triggered Plaintiff's symptoms of an underlying thought disorder, which Dr. Sparr thought was probably Paranoid Schizophrenia.  Dr. Sparr opined that Plaintiff should continue to be treated with Haldol injections.

The medical record indicates that Plaintiff's condition improved somewhat during the succeeding five years, while he was treated in an OHSU Intercultural Psychiatric Program, and that his condition subsequently worsened.  In a Mental Health Assessment Update completed on May 17, 2006, QMHA Alma Besic reported that Plaintiff's symptoms had worsened, and that he had begun to gamble excessively during the previous seven months.  Besic noted that Plaintiff had been diagnosed with a Schizoaffective Disorder, and rated his Global Assessment of Functioning (GAF) score as 60.  During the next 18 months, Plaintiff was treated for sleep problems, crying episodes, irritability, and gambling addiction.  He was also treated for chest pain, bronchitis, back pain, and dysuria.

On March 27, 2008, Dr. John Givi, a clinical psychologist, conducted a comprehensive psychodiagnostic evaluation. Dr. Givi noted that Plaintiff had been born in Kosovo, and had experienced a number of traumatic events while serving in the military. He reported that Plaintiff had been hospitalized three times in Germany because of mental problems, for six weeks at a time, and that he had been hospitalized at least twice at OHSU in 2000 for similar problems. Plaintiff told Dr. Givi that he had visions in which he was about to be shot, feared someone was following him, and had significant problems sleeping. Plaintiff was tearful throughout the examination, and spoke frequently about war-time trauma and his fear of death.

Dr. Givi reported that some of Plaintiff's language and mental skills could not be adequately assessed because of Plaintiff's limited ability to speak English. He found that Plaintiff's memory and judgment were below normal limits, and that his affect and mood were depressed. He added that Plaintiff demonstrated problems with thought content and exhibited paranoia and irrational fears of death and attack. Dr. Givi concluded that

> In summary, his concept formation was failing. His memory, attention and concentration and social practical judgment were poor. His present fund of knowledge and insight were less than what was expected. His verbal abstraction skills were unable to be assessed. His thought content contained paranoia and fears, but his process appeared to be intact.

He opined that Plaintiff's anxiety, auditory hallucinations, and psychotic process were barriers to employment, and thought that Plaintiff could not manage his own funds. Dr. Givi diagnosed Generalized Anxiety Disorder and Psychotic Disorder, NOS, and rated Plaintiff's GAF at 57.

In notes of a visit on July 23, 2008, Dr. J. David Kinzie, Plaintiff's treating psychiatrist, noted that Plaintiff was disheveled and appeared to be paranoid. He rated Plaintiff's GAF at 50, a score indicating "serious impairment" such as the inability to keep a job. Diagnostic and

Statistical Manual of Mental Disorder,  DSM-IV-TR (2000).  Dr. Kinzie rated Plaintiff's GAF at 50 again during a visit on August 26, 2008.

In a Psychiatric Review Technique completed on August 6, 2008, Dr. Kinzie identified Plaintiff's mental disorder as a category 12.03 impairment, a classification that applies to schizophrenic, paranoid, and "other" psychotic disorders.  He reported that  Plaintiff's symptoms included delusions or hallucinations, incoherence, loosening of associations, illogical thinking, or poverty of content of speech associated with inappropriate affect, and emotional withdrawal or isolation.  Dr. Kinzie noted that Plaintiff had been repeatedly hospitalized for psychosis with agitation, delusions, hallucinations, and severe behavioral impairment.  He reported that Plaintiff was being treated with high doses of antipsychotic medications, and that these  achieved only mild control of his symptoms.  Dr. Kinzie opined that Plaintiff had moderate restrictions of activities of daily living; moderate difficulties maintaining social functioning; and moderate difficulties maintaining concentration, persistence, and pace.  He further opined that Plaintiff had experienced 4 or more episodes of decompensation of extended duration.

In the paragraph C section of the Psychiatric Review Technique, Dr. Kinzie indicated that Plaintiff had a more than two year documented history of a mental disorder that resulted in repeated episodes of decompensation of extended duration, and that his residual disease process resulted in such marginal adjustment that even a minimal increase in mental demands or changes in his environment would cause him to decompensate.  He indicated that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, complete a normal work day or work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to respond appropriately to changes in a work

setting, to be aware of normal hazards and to take appropriate precautions, to travel to unfamiliar

places or to use public transportation, or to set realistic goals or make plans independently of

others.  Dr. Kinzie opined that Plaintiff was markedly limited in his ability to accept instructions

and respond appropriately to criticism from supervisors, and in his ability to get along with

coworkers or peers without distracting them or exhibiting behavioral extremes.  He opined that

Plaintiff had been disabled for 9 months.

Plaintiff continued to be treated at OHSU for his mental problems and for issues

including anger, a gambling addiction, and sleep difficulties.  On January 16, 2009, Dr. Gompy

Goswami noted that Plaintiff had pain in his right arm, and that this had been a problem for him

during the previous 9 years.  On February 4, 2009, Dr. Kinzie noted that Plaintiff had been

tearful, sad, and withdrawn during an office visit.  On May 27, 2009, he indicated that Plaintiff

had been doing well with Haldol injections.

In notes of an examination on April 14, 2009, Dr. Linda Cruz indicated that Plaintiff

reported that he had been short of breath and had been experiencing pain in his right arm from

his shoulder to his elbow.  She noted that Plaintiff had decreased range of motion in his shoulder

and tenderness on the biceps tendon and rotator cuff.  Dr. Cruz added that Plaintiff's speech was

slowed and slurred, and opined that his schizophrenia otherwise seemed well controlled.

On May 21, 2009, Dr. Cruz indicated that Plaintiff reported neck and back pain following

an automobile accident.  On August 4, 2009, she indicated that the pain had decreased with use

of a physical therapy pillow, but that Plaintiff continued to have  pain and limited range of

motion in his right shoulder.  On August 31, 2009, she noted that Plaintiff's diabetes was under

fair control.  On September 14, 2009, Dr. Cruz noted that Plaintiff had completed 16 sessions of

physical therapy following his automobile accident, and that he was to continue treatment for an

FINDINGS AND RECOMMENDATION - 8

additional four weeks.

On July 26, 2010, while his request for review by the Appeals Council was pending, Plaintiff was treated in the OHSU emergency room for worsening paranoia and suicidal ideation. He was admitted to the OHSU hospital, and was examined by Dr. William Wilson. Dr. Wilson noted that Plaintiff had been stable until a few days earlier, when he became increasingly paranoid, believing that he was being followed by someone who wanted to break into his house and murder his son. Plaintiff reported that he had been hearing voices and had not been sleeping. Dr. Wilson noted that Plaintiff had a substantial history of psychiatric hospitalizations, and noted that he appeared apprehensive, had muffled speech, exhibited paranoid notions, and was depressed and distraught. Plaintiff displayed suicidal ideation. Dr. Wilson diagnosed Schizoaffective Disorder and Post Traumatic Stress Disorder (PTSD). He rated Plaintiff's GAF score at 30 upon admission, and at 50 on August 4, 2010, when he was discharged.

In addition to the material above, which is included in the administrative record, Plaintiff has attached to his opening memorandum a letter from Dr. Kinzie to his former counsel, dated February 2, 2010. Plaintiff's present counsel asserts that Plaintiff's former counsel mistakenly believed that this letter had been submitted to the Appeals Council while Plaintiff's request for review was pending. Counsel argues that the letter is material, and that the former counsel's error as to its inclusion constitutes "good cause" for its consideration now.

For the reasons set out below, I conclude that this action should be remanded for an award of benefits whether or not the February 2, 2010 letter is considered. I note, however, that the letter is fully consistent with Dr. Kinzie's opinion, which was included in the administrative record, that Plaintiff was too severely impaired to be employed. In the letter, Dr. Kinzie characterized Plaintiff as "one of the most mentally ill patients" he had treated in "40 years of

practice." He stated that Plaintiff was "clearly taking a huge amount of medicine just to control

his agitation, hallucinations, and irritability," and that keeping Plaintiff out of the hospital had

been "very difficult." Dr. Kinzie reported that Plaintiff's "English is not good." He noted that

he used a Bosnian interpreter when treating Plaintiff, and opined that not having an interpreter at

his hearing was "more than a handicap." He further opined that there was "[n]o way that he can

hold down a job." He asserted that the ALJ had erroneously concluded that Plaintiff had cared

for the residents in "the family nursing home" during his wife's brief absence, when his daughter

had instead been responsible for patient care.

### Testimony

#### Plaintiff

Plaintiff testified as follows at the hearing before the ALJ.

Plaintiff was born in Yugoslavia and came to the United States in 2000. He cannot write

in English, and his ability to read in English is quite limited.[1] Plaintiff was fired from his last job

because he did not understand the training he was given.

Plaintiff has had psychiatric treatment to address his war experiences, and takes

medication for schizophrenia. He was hospitalized because of mental illness three times while

he lived in Germany before coming to the United States, and has been hospitalized because of

mental problems here as well. Plaintiff sometimes sees and hears things that are not there: He

fears that someone wants to kill him, and this fear makes it difficult to work around other people.

Plaintiff has repeated mood swings on a daily basis, and has trouble controlling himself.

He has diabetes. Plaintiff had problems keeping up with the pace of his most recent job: He was

---

[1]Review of the transcript of the hearing confirms Plaintiff's assertion that his English skills are limited. Plaintiff clearly did not fully comprehend many of the questions posed by the ALJ and counsel, and a number of his answers appear not to have addressed the questions he was asked.

FINDINGS AND RECOMMENDATION - 10

yelled at for being too slow, had sought increased medication from his doctor to cope with the stress, and was eventually fired because he had memory problems and was not learning the job.

**Lay Witness Testimony**

Aida Elezovic, a friend of Plaintiff, submitted a questionnaire provided by the Social Security Administration (the Agency). She described Plaintiff's activities and limitations as follows.

Plaintiff sleeps most of the time. He was in the army of the former Yugoslavia for many years; he now fears military personnel and loud noises, and has problems because he thinks someone will kill him. He forgets to take his medications, and must always be reminded to take them. Plaintiff has problems focusing and becomes discouraged when he tries to do chores. He is forgetful when handling money, and generally has problems with his memory. Plaintiff has problems completing tasks, concentrating, understanding, following instructions, and getting along with others. He must be "walked through" instructions one step at a time.

**Vocational Expert**

The ALJ asked the Vocational Expert (VE) to consider an individual of Plaintiff's age, education, and experience, who needed to avoid concentrated exposure to pulmonary irritants, was limited to tasks that could be learned in less than 30 days and involved no more than simple work-related decisions and few workplace changes, could not read instructions, write reports, or do math calculations, and could engage in no more than occasional, structured interactions with the public, coworkers, and supervisors. The VE testified that the described individual could not perform Plaintiff's past relevant work, but could work as a wire worker, potato chip sorter, or egg washing machine operator. When the ALJ added to this hypothetical an inability to perform

at a consistent pace for two hours out of an eight hour work day, the VE testified that the individual could not sustain employment.

Plaintiff's hearing counsel asked the ALJ to consider an individual with the above limitations who had a marked impairment in the ability to accept instructions and respond appropriately to criticism from supervisors and a marked impairment in ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The VE testified that these limitations would preclude competitive employment.

### ALJ's Decision

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.

At the second step, the ALJ found that Plaintiff's schizoaffective disorder and diabetes mellitus, type II, were severe impairments.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). She found that Plaintiff retained the capacity to perform a full range of work at all exertional levels, subject to the following limitations:

> no exposure to hazardous conditions, such as heights and hazardous machinery; avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases; with tasks that can be learned in thirty days or less involving no more than simple work-related decisions with few work place changes (unskilled work); no requirement to read instructions or write reports; no math calculations such as work as a teller or cashier; occasional and structured interaction with the public, co-workers and/or supervisor.

Based upon the testimony of the VE, at the fourth step of her disability analysis the ALJ found that Plaintiff could not perform his past relevant work. In reaching this conclusion, the ALJ concluded that Plaintiff's description of his symptoms and limitations was not wholly credible.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in substantial numbers in the national economy. She cited wire worker/stripper and potato chip sorter positions as examples of these jobs. Based upon this finding, she concluded that Plaintiff was not disabled within the meaning of the Act.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is

susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

### Discussion

Plaintiff contends that the ALJ erred in finding that his mental impairments do not meet

or equal Listing 12.03C, improperly rejected his testimony and lay witness testimony, and posed

a vocational hypothetical that did not include all of his limitations.  He also contends  that the

ALJ and the Appeals Council improperly rejected the opinion of his treating physician.

The ALJ's evaluation of Plaintiff's mental illness is the central issue, and the

fundamental question is whether the ALJ erred in concluding that this impairment was not of

disabling severity.

### 1. **Whether Plaintiff's Mental Impairment Met or Equaled Listing 12.03C**

Plaintiff contends that his mental impairment meets or equals the severity required to

establish disability under Paragraph C of Listing 12.03--the Listing for Schizophrenic, Paranoid

and Other Psychotic Disorders, 12.03.  The criteria for that Listing include a

> Medically documented history of a chronic schizophrenic, paranoid, or other
> psychotic disorder of at least 2 year's duration that has caused more than a minimal
> limitation of ability to do basic work activities, with symptoms or signs currently
> attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment
> that even a minimal increase in mental demands or change in the environment would
> be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly
> supportive living arrangement, with an indication of continued need for such an
> arrangement.

20 C.F.R.§404, Appendix 1, Subpart P, Listing 12.03C.

FINDINGS AND RECOMMENDATION - 14

The requirement of a "documented history" of a psychotic disorder is satisfied by the diagnoses of several medical sources, including Dr. Kinzie, Plaintiff's treating physician, who opined that Plaintiff's mental illness was in the "schizophrenic, paranoid, and other psychotic disorders" category. Dr. Kinzie noted Plaintiff's repeated hospitalizations, and reported that Plaintiff had experienced 4 or more episodes of decompensation of extended duration. In completing the Psychiatric Review Technique, he reiterated his opinion that Plaintiff's mental impairment had resulted in repeated episodes of decompensation of extended duration and a residual disease process that had resulted in such marginal adjustment that a minimal increase in mental demands or change in the environment would likely cause decompensation. He further opined that Plaintiff was markedly limited in his ability to accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. He characterized Plaintiff's prognosis as poor, and opined that Plaintiff had been unable to work during the previous 9 months and would continue to be severely impaired indefinitely.

Dr. Kinzie's assessment satisfies the criteria of 12.03C1 and 12.03C2 set out above. Therefore, unless she provided adequate reasons for rejecting Dr. Kinzie's opinion, the ALJ was required to find that Plaintiff was disabled under that Listing.

In discussing her conclusion that Plaintiff's mental impairment did not satisfy the requirements of 12.03, the ALJ noted that, on the day of his functional assessment, Dr. Kinzie had indicated that Plaintiff's functioning had improved since his last visit. She also noted that Dr. Kinzie had assessed GAF scores of 60 at times, and that, in concluding that the criteria for 12.03C were met, Dr. Kinzie had relied on much earlier hospitalizations. The ALJ asserted that the medical record showed that Plaintiff's condition was stable with medication. She further

asserted that Plaintiff's ability to travel to Germany for a wedding in the fall of 2008 was inconsistent with Dr. Kinzie's opinion that a minimal change in mental demands or environment would cause decompensation, and concluded that Dr. Kinzie's opinion that Plaintiff had been unable to work during the 9 months before his assessment was insufficient to meet the "one-or-more-year requirement of 12.03C."

These are not sufficient bases for rejecting Dr. Kinzie's opinion.  Even assuming that Paragraph 12.03C3 is not satisfied because Dr. Kinzie indicated only 9 months of previous inability to work, Listing 12.03C requires only that one of the paragraphs be satisfied, and the ALJ did not provide sufficient reasons for concluding that the requirements of 12.03C1 and 12.03C2 are not met.  Though Dr. Kinzie's notes indicated that Plaintiff had improved somewhat at the time of his functional assessment, his treating notes consistently reported substantial fluctuations in Plaintiff's condition, and showed that Plaintiff's condition worsened substantially within a few months of the August, 2008 assessment.  Plaintiff's ability to travel in 2008 is not inconsistent with Dr. Kinzie's assessment, but instead supports his conclusion that changes in environment or increased  mental demands would likely cause decompensation: Dr. Kinzie's treatment notes indicate that Plaintiff was "expansive and hypomanic" upon his return from Germany, and required significant adjustment of his already substantial medication.

A careful examination of the medical record and the ALJ's decision supports only the conclusion that the ALJ erred in finding that Plaintiff's mental disorder did not meet the requirements of Listing 12.03C.  Because a claimant whose impairment meets or equals the severity of an impairment in the Listing is disabled within the meaning of the Act, this action should be remanded for a finding of disability and an award of benefits.

2. **Rejection of Medical Opinion and Post Hearing Evidence**

My conclusion that the ALJ erred in finding that Plaintiff's medical impairment did not meet or equal a Listed impairment makes it unnecessary to reach the balance of Plaintiff's arguments.  Nevertheless, in order to create a full record for review, I will briefly address Plaintiff's other arguments.

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Kinzie, his treating physician, and that the Appeals Council improperly rejected evidence of his psychiatric hospitalization while his request for review was pending.

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions,  Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995), and must provide "specific, legitimate reasons . . . based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

Plaintiff contends that the ALJ did not provide legally sufficient reasons for rejecting Dr. Kinzie's opinion as to the severity of his mental impairments, and argues that, if accepted, that opinion establishes his disability.  I agree.  As noted above, Dr. Kinzie opined that Plaintiff's mental impairments met the criteria for Listing 12.03C, and opined that Plaintiff had marked limitations in his ability to accept instructions and respond appropriately to criticism from superiors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  He also opined that Plaintiff had been unable to work for 9 months at the time of that assessment, had a poor prognosis, and would continue to be severely impaired indefinitely.

The ALJ gave "little weight to Dr. Kinzie's opinion that the claimant's mental impairment meets a listing."   She characterized Dr. Kinzie's assessment as "inflated," and gave it "some weight."  The ALJ cited a treatment note from Dr. Linda Cruz dated April 9, 2009, as evidence that Plaintiff's mental impairment was less severe than assessed by Dr. Kinzie.  In that note, recording a visit for treatment of Plaintiff's shoulder pain, Dr. Cruz opined that Plaintiff's mental impairment was being "well-controlled."

It is not clear that any treating or examining physician contradicted Dr. Kinzie's opinion as to the severity of Plaintiff's mental impairment. However, even assuming that Dr. Cruz or another physician in fact contradicted Dr. Kinzie's assessment, neither Dr. Cruz's treatment note nor the ALJ's other reasons for discounting Dr. Kinzie's assessment noted in the discussion above provide the sort of "specific, legitimate reasons" supported by substantial evidence required to reject Dr. Kinzie's opinion.  Dr. Cruz is not a specialist in psychiatry, and she did not purport to perform a thorough evaluation of Plaintiff's mental illness.  Instead, her comment concerning Plaintiff's  mental condition was made in the context of her examination of Plaintiff's shoulder, and she noted as well that Plaintiff's speech was slow and slurred.  Dr. Cruz's observation that Plaintiff's impairment appeared to be well controlled at the time of the visit was not inconsistent with Dr. Kinzie's own records, which indicated periods of mild improvement and severe decline.  Dr. Kinzie's unrebutted assessment showed a level of impairment that met a Listed impairment, and his opinion that Plaintiff could not work was consistent with the VE's testimony that an individual with the marked limitations that Dr. Kinzie assessed could not perform competitive employment.

Where, as here, an ALJ fails to provide adequate reasons for rejecting the opinion of a treating physician, the opinion is credited as a matter law.  Lester, 81 F.3d at 834.  Remand for

an award of benefits is then appropriate if the record is fully developed, and it is clear that a

finding of disability would be required if the improperly rejected evidence were accepted.

Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  Here, remand for an award of benefits is

appropriate because the record is fully developed and a finding is disability is required if Dr.

Kinzie's opinion is accepted.

Remand for an award of benefits is also appropriate because the Appeals Council erred in

concluding that evidence it was provided while Plaintiff's request for review was pending did

not provide a basis for altering the ALJ's decision.  As noted above, Plaintiff was hospitalized

because of paranoid delusions, auditory hallucinations, and suicidal ideation from July 26, 2010,

through August 4, 2010.  When he was admitted, Dr. Wilson, assessed a GAF score of 30.  The

Appeals Council concluded that this hospitalization was not relevant because it occurred after

the ALJ had issued her decision and did not pertain to the period at issue in Plaintiff's

application.

Evidence of Plaintiff's psychiatric hospitalization while his request for review was

pending is properly before the court because it was considered by the Appeals Council.  E.g.,

Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993) (reviewing court considers post-decision

evidence submitted to and reviewed by Appeals Council).  That evidence was relevant to the

period in question because the record before the ALJ included Dr. Kinzie's conclusions that

Plaintiff's prognosis was poor, that Plaintiff would likely experience ongoing episodes of

decompensation, and that even a minimal increase in stress could cause such an episode.  The

evidence contradicted the ALJ's assertion that Dr. Kinzie's opinion of the severity of Plaintiff's

mental impairment was "inflated," and added to the already substantial evidence supporting the

conclusion that his impairment met the criteria of a Listing.  In the absence of substantial

FINDINGS AND RECOMMENDATION - 19

evidence supporting the ALJ's conclusion that Plaintiff's mental impairment does not meet the criteria of a Listed impairment this action should be remanded for an award of benefits.

3. **Plaintiff's Credibiltiy**

      Plaintiff contends that the ALJ failed to provide sufficient reasons supporting her conclusion that he was not wholly credible. I agree.

      Where, as here, a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). The ALJ asserted that Plaintiff was not wholly credible because the record showed that he had not been terminated from his last employment for cause; he was able to fish, travel abroad for a family wedding in 2008; could care for elderly patients in the family's group home; and did not comply with a doctor's advice that he seek individual therapy.

      These are not clear and convincing reasons for concluding that Plaintiff was not credible. The record establishes that Plaintiff did not care for elderly patients during his wife's brief absence, but that instead his daughter assumed that responsibility. Plaintiff's ability to go fishing with friends is not inconsistent with any of Plaintiff's testimony, including his allegations of disabling mental impairments, and his ability to travel abroad does not support the conclusion that he was not severely impaired. Plaintiff's ability to accompany family members on a trip abroad is not inconsistent with his allegations of a disabling impairment. Also, as noted above, Plaintiff exhibited hypomanic symptoms and required increased medication upon his return. The record concerning Plaintiff's most recent loss of employment is equivocal, especially in light of

Plaintiff's difficulty understanding and communicating in English. The record includes evidence that Plaintiff's last employer was dissatisfied with his attendance and performance, and that Plaintiff was disciplined before he was terminated or laid off. There is little support for the conclusion that Plaintiff did not testify truthfully about his last work or about his inability to function on the job. Whether Plaintiff was ultimately terminated for poor performance or was laid off because of a business downturn is of little consequence because substantial evidence supports Plaintiff's allegations that he has lacked the residual functional capacity required to work since he was last employed.

The ALJ did not provide sufficient reasons for discrediting Plaintiff, and his testimony, if accepted, would require a finding of disability. Under these circumstances, the action should be remanded for an award of benefits. See, e.g., Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (remand for award of benefits appropriate if claimant's testimony rejected without sufficient support and testimony would establish disability if accepted).

4. **Rejection of Lay Witness Testimony**

As noted above, Plaintiff's friend, Aida Elezovic, completed a questionnaire provided by the Agency in which she asserted that Plaintiff had problems with his memory, had problems completing tasks, concentrating, understanding, following instructions, and getting along with others, and had to be "walked through" instructions one step at a time.

The ALJ gave this testimony "some weight," and asserted that her RFC assessment reflected Ms. Elezovic's testimony.

An ALJ must provide reasons that are "germane" for rejecting lay witness testimony. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ did not provide such a reason for not wholly crediting Ms. Elezovic's testimony, and her RFC did not reflect the severity of the

impairments that this witness described.  The Commissioner now argues that Ms. Elezovic's testimony was inconsistent with the medical evidence.  However, I cannot and do not reach the question whether that argument has merit, because it was not a reason cited by the ALJ for rejecting the lay witness testimony.  As Plaintiff correctly notes, this court may consider only the reasons provided by the ALJ, and cannot consider rationale subsequently added by the Commissioner.  E.g., Connett v. Harnhart, 340 F.3d 871,   (9th Cir. 2003).

The ALJ's failure to provide a legally sufficient basis for rejecting lay witness testimony is not dispositive here, because the decision denying Plaintiff's application for benefits should be reversed on the other grounds discussed above.  Nevertheless, this  error provides additional support for the conclusion that the decision should be reversed and that the action should be remanded for an award of benefits.

5. **Inadequacy of ALJ's Vocational Hypothetical**

In order to be accurate, an ALJ's hypothetical to a VE must set out all of a claimant's impairments and limitations.  E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and supported by the medical record."  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  If the assumptions set out in the hypothetical are not supported by the record, a VE's conclusion that a claimant can work does not have evidentiary value.  Gallant, 753 F.3d at 1456.

Plaintiff contends that the ALJ's vocational hypothetical did not include all of his impairments.  I agree.  The hypothetical omitted significant impairments identified by Plaintiff's treating physician, and by the testimony of Plaintiff and the lay witness which was not properly credited.  Under these circumstances, the VE's testimony that Plaintiff could perform "other work" lacked evidentiary value.

FINDINGS AND RECOMMENDATION - 22

## Conclusion

A judgment should be entered REVERSING the Commissioner's decision and REMANDING this action to the Agency for an award of benefits.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due December 14, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 27th day of November, 2012.


      /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 23